# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Criminal No. 17-160 (DWF/KMM) |
| | Civil No. 19-1086 (DWF) |
| Respondent-Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| Nathan Allen Debruzzi, | |
| Petitioner-Defendant. | |

---

Nathan Allen Debruzzi, Petitioner-Defendant, *Pro Se*.

Laura M. Provinzino, Assistant United States Attorney, United States Attorney's Office, counsel for the Government.

---

# INTRODUCTION

This matter is before the Court on Petitioner-Defendant Nathan Allen Debruzzi's ("Petitioner-Defendant") *pro se* motion under 28 U.S.C. § 2255 to vacate his sentence of 108 months' imprisonment and resentence him. (Doc. No. 48.) The United States of America (the "Government") opposes Petitioner-Defendant's motion. (Doc. No. 59.)

Petitioner-Defendant claims four grounds for relief, all based upon what he contends was ineffective assistance on the part of his former counsel by: (1) refusing to follow Petitioner-Defendant's wishes throughout his proceedings, (2) telling Petitioner-Defendant he was not there to help Petitioner-Defendant, (3) failing to seek an evaluation that would benefit Petitioner-Defendant's case until prompted to do so by the

Court, and (4) failing to pursue a favorable sentence by requesting a longer term of imprisonment than was ultimately imposed. Petitioner-Defendant also contends that he did not directly appeal his conviction because his attorney did not apprise him of his rights and options regarding an appeal. The Government opposes resentencing, arguing that Petitioner-Defendant's claims of ineffective assistance of counsel are without merit, and further, that no evidentiary hearing is warranted because the record conclusively supports the judgment as entered.

For the reasons set forth below, the Court respectfully denies Petitioner-Defendant's motion.

## BACKGROUND

Petitioner-Defendant was charged with four counts by an indictment filed on July 11, 2017. (Doc. No. 1.) Counts 1 through 3 charged distribution of child pornography in violation of 18 U.S.C. §§ 2252(a)(2) and (b)(1), and Count 4 charged possession of child pornography in violation of 18 U.S.C. §§ 2252(a)(4)(B) and (b)(2). (*Id.*) The indictment also included forfeiture allegations pursuant to 18 U.S.C. 2253(a). (*Id.*)

Pursuant to a written plea agreement (Doc. No. 24 ("Plea Agreement")), on December 1, 2017, Petitioner-Defendant entered a plea of guilty to Count 1 of the indictment. (Doc. No. 23 ("Change of Plea Hrg.").[1]) A Presentence Investigation Report ("PSR") was ordered (*id.*), and each party filed a sentencing memorandum setting forth

---

[1] No official transcript of this hearing has been prepared.

2

their respective positions (Doc. Nos. 34, 36 (filed under seal)).  The PSR included calculations under the United States Sentencing Guidelines (the "Guidelines") factoring in a total offense level of 39 and a criminal history category ("CHC") of I, resulting in an advisory Guidelines range of 262 to 327 months' imprisonment.  (Doc. No. 40 ("PSR") ¶ 94.[2])  The PSR noted that because the statutory maximum sentence of twenty years was lower than the Guidelines range, 240 months would be the guideline term of imprisonment.  (*Id.*)  Petitioner-Defendant responded to the initial version of the PSR that was disclosed to the parties.  (PSR at A.2-3.)  Petitioner-Defendant's remaining objections, as well as one remaining objection from the Government, were noted in the PSR Addendum and the substance of the objections was also addressed in Petitioner-Defendant's first sentencing memorandum among other arguments.  (PSR at A.1-3; Doc. No. 34 ("Def. Sent. Mem.")  at 2-5.)

Petitioner-Defendant was sentenced on April 17, 2018.  (Doc. Nos. 42, 43.)  At sentencing, this Court adopted the PSR with changes.  (Doc. No. 43 ("Stmt. of Reasons") Sec. I.)  Specifically, the Court adjusted the total offense level to 34 from 39, overruling the application of a 5-level enhancement for engaging in a pattern of activity involving sexual abuse or exploitation of a minor, resulting in a Guidelines range of 151 to 180 months' imprisonment.  (*Id.* at B.1, 4, and Sec. III.)  The Court pronounced a sentence of 108 months' imprisonment in total, after departing downward and granting a downward

---

[2]  Doc. No. 40 is the revised PSR; an initial version (Doc. No. 30) was previously filed.

variance, and Counts 2 through 4 were dismissed on the motion of the Government. (*Id.* Sec. IV; Doc. No. 42 at 1.)

Petitioner-Defendant did not file a direct appeal. Petitioner-Defendant timely filed this § 2255 motion and supporting memorandum of law on April 22, 2019 (Doc. No. 48), which the Government opposes in its response filed on July 31, 2019 (Doc. No. 59). The Court granted the Government's motion to confirm waiver of attorney-client privilege (Doc. No. 52) on May 6, 2019 (Doc. No. 54), and Petitioner-Defendant's former counsel submitted an affidavit that was filed with the Government's response (Doc. No. 59, Ex. 1 ("White Aff.")).

**I.     Plea Agreement**

Petitioner-Defendant signed a Plea Agreement with the Government on December 1, 2017. (Plea Agreement at 7.) The parties agreed that Petitioner-Defendant would plead guilty to Count 1 of the indictment and that the Government would move to dismiss the remaining counts at sentencing. (*Id.* ¶ 1.) The parties agreed to the factual basis for the Count 1 and agreed that by statute, Petitioner-Defendant would be subject to a mandatory minimum of five years' imprisonment and a maximum of twenty years. (*Id.* ¶¶ 2, 4(a)-(b).) The parties also agreed that Petitioner-Defendant would be subject to a term of supervised release of five years to life, and that mandatory restitution payments would be ordered "in an amount to be determined by the Court."[3] (*Id.* ¶ 4(c), (f).)

---

[3]     The Court recognizes that the Government noted the still-pending issue of the amount of restitution to be ordered in this case (Doc. No. 59 at 9, n. 2), which the Court will address apart from Petitioner-Defendant's § 2255 motion. Restitution was ordered as a condition of Petitioner-Defendant's sentence. (Doc. No. 42 at 3.)

4

Petitioner-Defendant waived his right to litigate pretrial motions and withdrew any motions then pending before the Court. (*Id.* ¶ 3.)

The Plea Agreement addressed the applicable Guidelines, with the parties stipulating to a base offense level of 22 and agreeing that a four-level specific offense characteristic enhancement for materials portraying sadistic, masochistic, or other depictions of violence would apply, along with a five-level increase for an offense involving more than 600 images. (*Id.* ¶6(b).) The parties noted their disagreement as to the applicability of further enhancements, with the Government noting its belief that three additional enhancements totaling a six-level increase should apply. (*Id.*) The Government agreed, however, to recommend a three-level reduction in Petitioner-Defendant's total offense level for acceptance of responsibility. (*Id.* ¶ 6(c).) The parties noted their belief that Petitioner-Defendant's record would place him in CHC I but specified that this was not a stipulation and that he would be sentenced based on his true criminal history as determined through the presentence investigation and would not be permitted to withdraw from the Plea Agreement. (*Id.* ¶ 6(d).) The parties noted that by the Government's calculations, the Guideline Range would be an adjusted offense level of 34 combined with a CHC I, resulting in a range of 151 to 188 months' imprisonment, while by Petitioner-Defendant's calculations his adjusted offense level would be 28, which when combined with CHC I would result in a range of 78 to 97 months of imprisonment. (*Id.* ¶ 6(e).) The parties both reserved the right to make motions for departures at sentencing and to argue for a sentence outside the Guidelines. (*Id.* ¶ 6(h).)

The parties stated their understanding that while they were bound by their stipulations with respect to Guidelines calculations, the Court was not. (*Id.* ¶ 7.) The parties agreed that the Court "may make its own determination regarding the applicable Guidelines factors and the applicable [CHC]," and "may also depart from the applicable Guidelines range." (*Id.*) Even if the Court determined that the applicable Guidelines calculations or Petitioner-Defendant's CHC were different from those calculated by the parties, they agreed that they could not withdraw from the Plea Agreement and that this Court's determinations would govern the sentence imposed. (*Id.*) The Plea Agreement contained no waivers of appeal. (*Id.*)

## II. Presentence Investigation Report

On the same day that Petitioner-Defendant entered his plea of guilty, this Court ordered the United States Probation Department ("Probation") to prepare a PSR. (Change of Plea Hrg.) The PSR stated Petitioner-Defendant's base offense level to be 22, and added specific offense characteristics increasing the offense level by two for material involving a prepubescent minor, a two-level increase for knowingly engaging in distribution, a four-level increase for material portraying sadistic or masochistic conduct or other depictions of violence, a five-level increase for engaging in a pattern of activity involving sexual abuse or exploitation of a minor, a two-level increase for use of a computer or interactive computer service in the offense, and a five-level increase for an offense involving 600 or more images, resulting in a total offense level of 39 after the three-level decrease for acceptance of responsibility. (*Id.* ¶¶ 31-45.)

The PSR briefly summarized Petitioner–Defendant's lifelong experiences of serious abuse and mental and physical health issues, as well as his lengthy history of different treatments with varying levels of success. (*Id.* ¶¶ 48-76.) It also summarized the findings of a psychosexual evaluation performed by two mental health professionals over a period between November and December of 2017 which supported diagnoses Petitioner-Defendant previously received. (*Id.* ¶ 77-78.)

The PSR calculated that under the Guidelines, the total offense level of 39 combined with a CHC of I resulted in a range of 262 to 327 months' imprisonment, but because the statutory maximum was a term of twenty years, the guideline term was likewise 240 months' imprisonment. (*Id.* ¶ 94.) The PSR noted that this range was not the same as that contemplated by either of the parties in the Plea Agreement due to the addition of the five-level enhancement for a pattern of activity involving sexual abuse. (*Id.* ¶ 96.)

The parties' unresolved objections to the PSR were noted in its addendum. (*Id.* at A.1-2.) The Government objected to the application of the five-level enhancement not contemplated in the Plea Agreement. (*Id.* at A.1.) Petitioner-Defendant also objected to the application of this enhancement, as well as to the other increases that the Government supported in the Plea Agreement. (*Id.* at A.2.)

### III. Petitioner-Defendant's Sentencing Memorandum

Through counsel, Petitioner-Defendant submitted a motion and supporting memorandum requesting a downward departure and variance at sentencing. (Doc. Nos. 33, 34 ("Sent'g. Mem.") (filed under seal).) Petitioner-Defendant noted that his only

criminal history involved juvenile matters. (Sent'g Mem. At 2.) The memorandum extensively described Petitioner-Defendant's "serious and persistent" mental illness, physical and medical conditions, and his lifetime of difficulty in finding appropriate treatment and assistance. (*Id.* at 2, 8-13.) Petitioner-Defendant argued that these ongoing challenges should be weighed in consideration of sentencing factors concerning not only his personal history and deterrence but also his need for appropriate treatment and the impact that incarceration would have on someone with his particular traits, and requested that he be placed in a medical facility to serve his term of imprisonment. (*Id.* at 2, 10-11.) Petitioner-Defendant also argued that the Government engaged in sentencing manipulation by drawing out the investigation longer than necessary, implicating a greater quantity of images. (*Id.* at 12-15.) Petitioner-Defendant argued that for all of these reasons, a significant departure and variance were warranted, but did not request a specific number of months for a term of imprisonment. (*Id.* at 16.)

## IV. Judgment and Statement of Reasons

On April 17, 2018, the Court imposed a term of imprisonment of 108 months and a lifetime term of supervised release. (Doc. No. 42 ("Jgmt.") at 1-3.) The Court adopted the PSR with changes, overruling the application of the five-level enhancement to which both parties objected and adjusting the total offense level to 34, which when combined with the CHC I resulted in a Guidelines range of 151 to 180 months. (Stmt. of Reasons Sec. I B 1, 4; Sec. III.) The Court departed downward, based on Petitioner-Defendant's mental and emotional condition and physical condition, among other reasons under the

Guidelines. (*Id.* Sec. V C.) The Court also granted a downward variance in consideration of sentencing factors under 18 U.S.C. § 3553(a). (*Id.* Sec. VI C.)

The Court recommended that Petitioner-Defendant be designated to the Federal Medical Center located in Rochester, Minnesota, noting its finding of compelling reasons for such placement based on Petitioner-Defendant's needs and the facility's proximity to his family. (Jgmt. At 2.) The Court referred the Bureau of Prisons to the psychosexual evaluation in the record "that substantiates the recommendations of the Court and also expresses extreme concern" for Petitioner-Defendant's well-being if placed in a nonmedical facility.[4] (*Id.*) The Court further noted that it found the experts' report to be "very credible and consistent with the history and record" in this case. (*Id.*)

## V.     Attorney White's Account

Petitioner-Defendant's former attorney ("Attorney White") disputes his account of the representation provided, including the allegation that his attorney did not work to have Petitioner-Defendant undergo a psychosexual evaluation until after the Court asked

---

[4]     Petitioner-Defendant was incarcerated at the Elkton, Ohio Federal Correctional Institution when he filed his motion, but a recent check of the Bureau of Prison's Inmate Locator tool shows that he has been relocated to the Greenville, Illinois Federal Correctional Institution. (Inmate Locator, *Find an inmate*, Federal Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited Oct. 21, 2019).) The Court continues to be concerned about Petitioner-Defendant's wellbeing, but the execution of his sentence is not a matter properly before the Court at this time. An attack on the manner in which a sentence is executed may be cognizable in a habeas corpus petition under 28 U.S.C. § 2241, but not under § 2255. *United States v. Knight*, 638 F.2d 46, 47 (8th Cir. 1981); *United States v. Monteer*, 556 F.2d 880 (8th Cir. 1977). A petitioner may bring a challenge to aspects of the execution of his sentence related to "the fact or duration of confinement" but not stemming from the "original conviction or sentence" under § 2241 in the district where he or she is incarcerated. *Crouch v. Norris*, 252 F.3d 720, 723 (8th Cir. 2001); *Matheny v. Morrison*, 307 F.3d 709, 711 (8th Cir. 2002).

at the Change of Plea Hearing if there would be an examination. Petitioner-Defendant claims that his lawyer "said he would sign him up" for an evaluation, but "[i]n the end," the Court "had to force it to happen." (Doc. No. 48 ("Petition") at 7.) Attorney White counters that he requested funds for a psychological evaluation on or about September 22, 2017, approximately five weeks prior to the hearing, and had been "in contact on numerous occasions" with Petitioner-Defendant's family members and treating mental health professionals in order to obtain his records. (White Aff. ¶ 8.) Attorney White submitted the completed evaluation to the Court prior to sentencing and relied upon the expert findings in his sentencing arguments. (*Id.* ¶¶ 9-10.) Attorney White also points out that contrary to Petitioner-Defendant's assertion that he "refused to use" the evaluation, "or even let [Petitioner-Defendant] talk about it" (Petition at 4), the Court's statements and recommendations at sentencing show that the report was considered. (White Aff. ¶¶ 10-11.)

Attorney White also notes that he continued to work on Petitioner-Defendant's behalf after his case was finalized and his voucher for payment was turned in, negotiating with the Government about the issue of restitution. (*Id.* at ¶¶ 12-13.) According to his former lawyer, Petitioner-Defendant only complained about the assistance he received after Attorney White conveyed to him the proposed resolution. (*Id.* ¶ 13.)

Although Attorney White maintains that Petitioner-Defendant had no grounds for appeal, he notes that he and the Court advised Petitioner-Defendant about appeal rights on the day of sentencing. (*Id.* ¶ 14.)

Finally, Attorney White contests Petitioner-Defendant's more general claim that there was a conflict between them in that Attorney White sought a longer sentence than was ultimately imposed and that he "treated [Petitioner-Defendant's] case like it was a waste of his time" (Petition at 8), stating that this claim is belied by the record (White Aff. ¶ 16[5]).

## DISCUSSION

### I. Section 2255 Legal Standard

Title 28, United States Code, Section 2255, provides that a prisoner "may move the court which imposed the sentence to vacate, set aside, or correct the sentence." In making such a motion, a § 2255 action requires a prisoner to show that he or she is entitled to such extraordinary relief because:

> [T]he sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . .

28 U.S.C. § 2255(a). If the court finds such a defect in sentencing, "the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b).

A § 2255 request for relief "is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and, if uncorrected, would result in a complete miscarriage of justice." *United States v. Apfel*,

---

[5] Paragraph 16 is mislabeled as "15" in the document; here the Court cites to the sixteenth paragraph.

97 F.3d 1074, 1076 (8th Cir. 1996). The scope of the remedy provided under § 2255 "does not encompass all claimed errors in conviction and sentencing." *Sun Bear v. United States*, 644 F.3d 700, 704 (8th Cir. 2011) (internal quotations omitted). Ordinary questions of sentencing guideline interpretation do not rise to the level of a "miscarriage of justice" and may not be relitigated under a § 2255 claim. *Id.*

As elaborated below, Petitioner-Defendant's claims do not describe any fundamental constitutional, jurisdictional, or other severe defect in his sentence.

## II. Ineffective Assistance of Counsel

Every criminal defendant has a constitutional right, guaranteed by the Sixth and Fourteenth Amendments, to effective counsel at trial and sentencing. *Strickland v. Washington*, 466 U.S. 668, 706 (1984); *Wooten v. Norris*, 578 F.3d 767, 781 (8th Cir. 2009). The Eighth Circuit follows the two-part *Strickland* test for reviewing claims of ineffective counsel; to succeed in his claim, Petitioner-Defendant must show that his counsel's performance was unreasonably deficient, and that Petitioner-Defendant "suffered such prejudice from the deficient performance there is a reasonable probability the result would have been different." *Roundtree v. United States*, 751 F.3d 923, 925 (8th Cir. 2014).

To prevail on a claim for ineffective assistance of counsel under § 2255, a defendant must overcome a "heavy burden." *Apfel*, 97 F.3d at 1076. A court should judge counsel's representation by a "most deferential" standard and resist the temptation to second-guess the performance of an attorney who "observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing

counsel, and with the judge." *Premo v. Moore*, 562 U.S. 115, 122 (2011) (citing *Strickland* at 689).

The same *Strickland* standard applies where a defendant entered a plea of guilty in lieu of exercising his or her right to a trial, but prejudice is established when a petitioner shows "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52 (1985); *Dat v. United States*, 920 F.3d 1192, 1195 (8th Cir. 2019). "[S]trict adherence to the *Strickland* standard is all the more essential when reviewing the choices an attorney made at the plea bargain stage," due to the "complex negotiations suffused with uncertainty" that are involved. *Premo* at 124-25. Negotiating a plea agreement is an art "at least as nuanced as the art of trial advocacy" that requires defense attorneys to "make careful strategic choices in balancing opportunities and risks." *Id.* at 124. The uncertainty in reviewing counsel's performance that results when there is "no actual history to show how the charges have played out at trial" works against a defendant who alleges inadequate assistance, but this is the same uncertainty a defense lawyer faces in negotiating a plea agreement. *Id.* at 132.

Petitioner-Defendant makes a series of interrelated claims about the ineffectiveness of the assistance he received. The Court carefully considered all of his allegations, but because his claims are not discrete they are consolidated in the following analysis.

### A. Psychological evaluation

Petitioner-Defendant contends that he completed an examination that he "felt would help his case" but his lawyer "refused to use it or even let [Petitioner-Defendant] talk about it." (Petition at 4.) His former counsel directly denies this claim. (White Aff. ¶¶ 8, 11, 15.) When comparing two written statements of "similar specificity" that are not self-contradictory or otherwise straining credulity, an inmate's written statement is "just as credible on its face" as the affidavit of his or her former attorney. *United States v. Sellner*, 773 F.3d 927, 930 (8th Cir. 2014). An attorney's contrary statement alone is insufficient to support a finding that the petitioner's allegations cannot be accepted as true." *Witthar v. United States*, 793 F.3d 920, 924 (8th Cir. 2015) (citing *Sellner* at 930) (internal quotation marks omitted).

Here, the record supports Attorney White's version of events. As noted above, the evaluation in question was referenced heavily in Petitioner-Defendant's sentencing papers. (*See generally* Sent'g Mem.) The reports were provided to the Court and given considerable weight at sentencing. (Jgmt. at 2.) The Court is "not permitted to make a credibility determination on the affidavits alone," but here, the decision does not "turn on credibility." *Thomas v. United States*, 737 F.3d 1202, 1206-07 (8th Cir. 2013). This is not a situation like that in *Sellner* or *Witthar* where the statements contain similar specificity—Attorney White points to facts in the record that support his account. Moreover, the record shows that the evaluation was used in furtherance of Petitioner-Defendant's interests. The Court finds that as to Petitioner-Defendant's allegations related to his attorney's failure to seek and use a psychological evaluation, the

14

record conclusively shows that his allegation cannot be accepted as true and Petitioner-Defendant is not entitled to relief. *Id.* at 1206 (internal citations omitted).

B. **Vigorous advocacy**

A criminal defendant has the "ultimate authority to make certain fundamental decisions" regarding his or her case while the defense attorney is responsible for making tactical, strategic decisions. *Id.* at 1207 (citing *Jones v. Barnes*, 463 U.S. 745 (1983); *Strickland* at 689). The defendant retains the "fundamental choices" whether to plead guilty, waive a jury, testify on his or her behalf, or take an appeal, but the attorney can properly make tactical decisions without client input. *Id.* at 1208-09 (internal citations omitted). To establish ineffective assistance of counsel, Petitioner-Defendant must prove that his counsel's representation was "unreasonable under prevailing professional norms and that the challenged action was not sound strategy." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).

In considering his claim, the Court must "assess counsel's overall performance throughout the case in order to determine whether the identified acts or omissions overcome the presumption that counsel rendered reasonable professional assistance," keeping in mind that "there are countless ways to provide effective assistance in any given case." *Id.* at 386 (citing *Strickland* at 689) (internal quotation marks omitted). The Court may not provide "'*post hoc* rationalization' for counsel's decision-making that contradicts the available evidence of counsel's actions" (*Harrington v. Richter*, 562 U.S. 86, 109 (2011) (quoting *Wiggins v. Smith*, 539 U.S. 510, 526-27 (2003)), but should recognize that defense attorneys can avoid activities that they judge to be distractions

15

from more important duties and "need not pursue" investigations that would be harmful or fruitless to the defense (*Richter* at 107-08).

The record shows that Petitioner-Defendant's counsel effectively negotiated on his behalf during the plea phase of proceedings and effectively advocated for a favorable sentence, evidenced in particular by the below-Guidelines term of imprisonment imposed after the Court granted both a downward departure and variance. Petitioner-Defendant has not met his burden to show that his lawyer's performance was deficient, and significantly, he has failed to demonstrate that he suffered any prejudice as a result.

### C. Appeal rights

"An attorney's failure to file a notice of appeal upon the client's request constitutes ineffective assistance of counsel, and no specific showing of prejudice is required," and "prejudice is presumed if the client asked his attorney to file a notice of appeal and the attorney did not do so." *Sellner* at 930 (internal citations omitted). No showing of prejudice is needed in this "unique circumstance" because a failure to file a requested appeal "amounts to the denial of counsel's assistance at a critical stage of the judicial proceeding." *Witthar* at 922-23.

Petitioner-Defendant's overarching claim of ineffective assistance of counsel seems to be that his attorney made errors that he would have appealed had he been aware of his ability to do so. The somewhat circular reasoning of his argument—his counsel provided ineffective counsel in that he failed to seek relief for ineffective assistance of counsel—is not new, and in fact, it is precisely why such claims are generally not the subject of a direct appeal.

As a practical matter, "it is difficult to identify and evaluate counsel's relevant conduct on direct review, and it is often impossible to determine prejudice prior to a final judgment." *Barajas v. United States*, 877 F.3d 378, 383 (8th Cir. 2017). It is normal practice to defer ineffective assistance claims to "collateral proceedings, when the necessary record can be developed." *United States v. Parrott*, 906 F.3d 717, 719 (8th Cir. 2018). Ineffective assistance of counsel claims are excepted from the general rule that claims not raised in a direct appeal may not be raised in collateral proceedings without establishing cause and prejudice, and such claims may be brought under § 2255 "whether or not the petitioner could have raised the claim on direct appeal." *Massaro v. United States*, 538 U.S. 500, 504 (2003).

In this case, Petitioner–Defendant correctly brought his claims of ineffective assistance of counsel in a § 2255 petition. It is the Court's strict practice, as the Government notes (Doc. No. 59 at 11), to scrupulously apprise every defendant of his or her rights with respect to appeals at every sentencing hearing. Even if his counsel failed to apprise him of his appeal rights, he was apprised by the Court, and he was not denied the opportunity to appeal on the grounds he alleges because his claims all relate to his counsel's performance.

A court does not need to determine whether an attorney's performance was deficient before examining the issue of whether the defendant suffered any prejudice "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice." *Nelson v. United States*, 909 F.3d 964, 970 (8th Cir. 2018). Here, Petitioner-Defendant has not shown that he suffered prejudice. Critically, he makes no

17

claim that he directed his attorney to file a notice of appeal or otherwise indicated that he wished to appeal but his direction was refused or ignored.

Careful review of the record before this Court shows that the facts do not support Petitioner-Defendant's claims and he has failed to show that he is entitled to the relief requested.

## EVIDENTIARY HEARING

Based on the record before the Court, there is no reason for the Court to further explore any credibility issues with respect to Petitioner-Defendant's claims. A § 2255 motion can be dismissed without a hearing when: (1) defendant's allegations, if accepted as true, would not entitle him to relief; or (2) the allegations cannot be accepted as true because they are contradicted by the record, are inherently incredible, or are conclusions, rather than statements of fact. *Delgado v. United States*, 162 F.3d 981, 983 (8th Cir. 1998). No hearing is necessary when the record is clear. *Latorre v. United States*, 193 F.3d 1035, 1038 (8th Cir. 1999). Applying this standard to the Petitioner-Defendant's allegations and the record before the Court, the Court concludes that no evidentiary hearing is required in this case.

## CERTIFICATE OF APPEALABILITY

An appeal cannot be taken from a final order denying a motion under § 2255 without a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(B)(2006); Fed. R. App. P. 22(b)(1). A court cannot grant a COA unless the applicant has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3).

The Court has considered whether the issuance of a COA is appropriate. *See Tiedeman v. Benson*, 122 F.3d 518 (8th Cir. 1997). In that context, the Court concludes that no issue raised is "debatable among reasonable jurists." *Flieger v. Delo*, 16 F.3d 878, 882 83 (8th Cir. 1994) (citing *Lozado v. Deeds*, 498 U.S. 430, 432 (1991) (per curiam)). The Petitioner-Defendant has not, therefore, made the "substantial showing of the denial of a constitutional right" necessary for the issuance of a COA. 28 U.S.C. § 2253(c)(2).

## CONCLUSION

The Court finds that the record in this case entirely forecloses any notion that Petitioner-Defendant's counsel provided ineffective assistance of counsel by failing to raise unfounded and futile arguments. Based upon the presentations and submissions of the parties, the Court having carefully reviewed the record in this matter, and the Court being otherwise duly advised in the premises, the Court hereby enters the following:

## ORDER

Based upon the foregoing, and on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Petitioner-Defendant Nathan Allen Debruzzi's *pro se* Motion to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255 (Doc. No. [48]) is respectfully **DENIED**.

2. No evidentiary hearing is required in this matter.

3. No Certificate of Appealability will be issued to Petitioner-Defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date: October 23, 2019

s/Donovan W. Frank
DONOVAN W. FRANK
United States District Judge